1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LIAM POWERS,

                  Plaintiff,

     v.

SEATTLE PUBLIC SCHOOL DISTRICT
NO 1; TED HOWARD, Individually and in
his official capacity as Principal of Garfield
High School; KATRINA HUNT,
Individually and in her official capacity as
Principal of Garfield High School,

                  Defendant.

CASE NO. 2:21-cv-01160-JHC

**ORDER ON PARTIES' MOTIONS
TO EXCLUDE EXPERT
TESTIMONY (DKTS. 33, 35 [37-1],
38)**

       In this Section 1983 action, Liam Powers, a former Garfield High School student, alleges

that defendants violated due process and should be held liable for common-law negligence in

connection with the long-term suspension and expulsion of Mr. Powers in the spring of 2018.

Dkt. 1. The parties have cross-moved for summary judgment. Dkts. 20, 22.[1] Before the

undersigned Magistrate Judge are motions to exclude expert testimony: (1) defendants' motion to

exclude the testimony of Joseph Vucinovich, Dkt. 33; (2) plaintiff's motion to exclude the

---

[1] Subsequent to the cross-motions for summary judgment, the parties asked to dismiss defendant
Larry Nyland from the case. Dkts. 31–32. Plaintiff has not indicated whether this means that his
motion for partial summary judgment, which sought judgment against all defendants except Mr.
Nyland, is now a motion for summary judgment on all claims against all defendants. *See* Dkt. 22.

1   testimony of Kurt Hatch, Dkt. 35, *as corrected at* Dkt. 37-1; and (3) plaintiff's motion to exclude

2   or limit the testimony of Hower Kwon, M.D., Dkt. 38. The Court **DENIES** defendants' motion

3   to exclude the testimony of Mr. Vucinovich, Dkt. 33; **DENIES IN-PART** plaintiff's motion to

4   exclude the testimony of Mr. Hatch with respect to the emergency expulsion decision, and

5   **GRANTS IN-PART** the motion to exclude the testimony of Mr. Hatch regarding the standard of

6   care owed to Mr. Powers *after* the emergency expulsion decision with leave to file an optional,

7   supplemental report by Mr. Hatch within fourteen days subject to rebuttal by plaintiff, Dkt 35

8   [37-1]; and **GRANTS** plaintiff's motion to limit the testimony of Dr. Kwon.

9   ## BACKGROUND

10          Mr. Powers alleges two causes of action based on his long-term suspension and eventual

11   expulsion from Garfield High School: (1) a federal violation of the Fourteenth Amendment Due

12   Process Clause; and (2) a state-law claim for negligence based on supplemental jurisdiction. Dkt.

13   1, at 8–9. In addition to plaintiff seeking to limit Dr. Kwon's testimony regarding emotional

14   damages, the parties seek to exclude the testimony of each other's corresponding experts—

15   plaintiff's expert Mr. Vucinovich and defendants' expert Mr. Hatch—on the "standard of care"

16   owed by the school administrators to plaintiff in the state-law claim for negligence.

17   ## LEGAL STANDARDS

18          Federal Rule of Evidence 702 provides that a witness "qualified as an expert by

19   knowledge, skill, experience, training, or education may testify in the form of an opinion or

20   otherwise if":

21                  (a) the expert's scientific, technical, or other specialized
                    knowledge will help the trier of fact to understand the evidence
22                  or to determine a fact in issue;
                    (b) the testimony is based on sufficient facts or data;
23                  (c) the testimony is the product of reliable principles and
                    methods; and

ORDER ON PARTIES' MOTIONS TO
EXCLUDE EXPERT TESTIMONY (DKTS.
33, 35 [37-1], 38) - 2

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "It is well settled that bare qualifications alone cannot establish the admissibility of . . . expert testimony." *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002). Rather, Rule 702 requires that expert testimony "be both relevant and reliable." *Estate of Barbarin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc). This requires federal district courts, acting in a gatekeeping role, to assess "whether the reasoning or methodology underlying the testimony" is valid and "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993) ("*Daubert I*"). It is not "the correctness of the expert's conclusions" that matters, but "the soundness of his methodology." *Estate of Barbarin*, 740 F.3d at 463. "As a general rule, 'testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'" *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008 (quoting Fed. R. Evid. 704(a)). However, "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on the ultimate issue of law." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quotation marks omitted). Expert witnesses may testify, however, as to industry practice or standards, which can be relevant and admissible. *See, e.g.*, *Muccie v. Dailey*, 2022 WL 1746755, at *1 (D. Mont. May 31, 2022); *Roohbakhsh v. Bd. of Trustees of Nebraska State Colleges*, 2019 WL 5653448, at *3 (D. Neb. Oct 31, 2019); *J.B. v. Mead Sch. Dist. No. 354*, 2010 WL 5173164 (Dec. 10, 2010), at *9. The proponent of the expert testimony has the burden of establishing that the expert's testimony meets the admissibility requirements by a preponderance of the evidence. Fed. R. Evid. 104; *see also Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

ORDER ON PARTIES' MOTIONS TO
EXCLUDE EXPERT TESTIMONY (DKTS.
33, 35 [37-1], 38) - 3

Although federal procedural law governs this case, the parties challenge two expert witnesses—plaintiff's expert Mr. Vucinovich and defendants' expert Mr. Hatch—on a question of state substantive law, the standard of care applicable to plaintiff's cause of action for negligence. Washington substantive law on negligence thus guides the Court's admissibility evaluation of the opinions of Mr. Vucinovich and Mr. Hatch under Rule 702. *See Taylor v. United States*, 2013 WL 2243750, at *2 (W.D. Wash. May 21, 2013); *Trowbridge v. United States*, 2009 WL 1813767, at *7 (D. Idaho June 25, 2009). To prevail in a negligence suit, a plaintiff must show: (1) the existence of a duty to the plaintiff; (2) a breach of that duty; (3) a resulting injury; and (4) the breach as the proximate cause of the injury. *N.L. v. Bethel Sch. Dist.*, 378 P.3d 162, 166 (Wash. 2016).

> Washington courts have long recognized that school districts have "an enhanced and solemn duty" of reasonable care to protect their students. This includes the duty to protect their students from the foreseeable risk of harm the students may inflict on each other. School districts have the duty "to exercise such care is an ordinarily responsible and prudent person would exercise under the same or similar circumstances."

*Id.* at 166 (citations omitted). In Washington, as a general proposition, "expert testimony is not required to establish a standard of care in an action for negligence. Only in a professional malpractice action must a plaintiff introduce expert testimony to establish the standard of care by which the defendant's conduct must be measured." *Petersen v. State*, 671 P.2d 230, 242 (Wash. 1983).[2] Nonetheless, the parties offer the expert testimony of Mr. Vucinovich and Mr. Hatch to

---

[2] In Washington, "districts have a duty of reasonable care to protect them from foreseeable dangers that could result from a breach of the district's duty," *N.L.*, 378 P.3d at 168, based on the care that "an *ordinarily responsible and prudent person* would exercise," *id.* at 166 (emphasis added). This contrasts with states such as Iowa, which typically will require plaintiffs to submit expert testimony to explain issues specific to a broad range of professional responsibilities or discretion, such as the standard of care applicable to school administrators during the disciplinary process. *See Doe v. Dordt Univ.*, 2022 WL 2833987, at * 37 (N.D. Iowa July 20, 2022).

ORDER ON PARTIES' MOTIONS TO
EXCLUDE EXPERT TESTIMONY (DKTS.
33, 35 [37-1], 38) - 4

1    assist the trier of fact in understanding the standard of care that an ordinarily responsible and

2    prudent school administrator would exercise under the same or similar circumstances.

3                                            **DISCUSSION**

4            The Court denies defendants' motion to exclude Mr. Vucinovich's testimony because the

5    testimony is relevant and reliable for addressing the duty owed by school administrators to

6    follow established laws, policies, and procedures to protect Mr. Powers from harm. The Court

7    denies in-part plaintiff's motion to exclude Mr. Hatch's testimony regarding the emergency

8    expulsion decision because that testimony is reasonable and reliable. The Court grants in-part

9    plaintiff's motion to exclude Mr. Hatch's testimony regarding any events subsequent to the

10   emergency expulsion decision because Mr. Hatch states no reliable methodology or reasoning

11   for assessing the standard of care owed by school administrators to Mr. Powers in connection to

12   the long-term suspension and permanent expulsion. The Court grants leave, however, for

13   defendants to submit an optional, supplemental report by Dr. Hatch that addresses these fatal

14   deficiencies, subject to rebuttal by plaintiff. The Court grants plaintiff's motion to limit Dr.

15   Kwon's testimony because it is beyond the scope of his forensic, psychiatric opinion on

16   emotional damages for him to opine personally that defendants acted appropriately with respect

17   to disciplining Mr. Powers. Dkt. 38.

18   **I.        Defendants' Motion to Exclude Mr. Vucinovich's Testimony**

19           Defendants contend Mr. Vucinovich lacks the requisite experience to offer a reliable and

20   helpful opinion about the standards of care applicable to a high school administration responding

21   to threats of gun violence and where the subsequent discipline overlapped with a criminal

22   investigation and a temporary protective order. Dkt. 33, at 2–3. Plaintiff responds that Dr.

23   Vucinovich is amply qualified to provide his testimony, which may be summarized as: "*Train,*

ORDER ON PARTIES' MOTIONS TO
EXCLUDE EXPERT TESTIMONY (DKTS.
33, 35 [37-1], 38) - 5

*understand, and follow the regulations. Follow the policies and procedures.*" Dkt. 48, at 9 (emphasis in original); *see* Dkts. 34 & 49-1 (Report of Joseph Vucinovich). The Court finds that Mr. Vucinovich is qualified to testify on this narrow question and this testimony may be helpful to a trier of fact.

Mr. Vucinovich served for twenty-one years as a school administrator, during which time he served as the President and Executive Board Member of the Washington Interscholastic Activities Association and President of the Northshore Association of School Administrators. Dkt. 34, at 11–12. He is qualified to testify regarding a central question of the negligence action: whether the district's failure to adhere to regulations and its own internal policies that protect the rights of an accused student might demonstrate that the conduct of school administrators fell below the relevant standard of care owed to Mr. Powers. Defendants' attack on Mr. Vucinovich's credentials, including that his last full-time position as an administrator was over twenty years ago and that he has not personally handled questions regarding school shootings, goes to the weight his testimony should be given, not its admissibility. *See, e.g.*, *C.N. v. Wolf*, 2006 WL 5105270, at *1 (C.D. Cal. November 13, 2006)). Mr. Vucinovich does not purport to testify as to areas outside his expertise, such as how administrative decision-making has changed with increased concern over school shootings or how criminal proceedings might impact such decisions. Defendants may challenge Mr. Vucinovich's testimony on such bases during cross-examination.

The Court accordingly denies defendants' motion to exclude Mr. Vucinovich's testimony.

1

2   **II.      Plaintiff's Motion to Exclude Mr. Hatch's Testimony**

3        Plaintiff contends Mr. Hatch's testimony should be excluded because it consists of

4   personal opinion and conclusory statements devoid of any reliable methodology for determining

5   what he considers to be the reasonable standard of care applicable to defendants before imposing

6   long-term suspension and permanent expulsion. Dkt. 37-1, at 3; *see* Dkt. 22 at 18. The Court

7   finds Mr. Hatch's expert opinion is relevant and reliable with respect to the emergency expulsion

8   decision but offers no support for his testimony on the standard of care owed by school officials

9   *to Mr. Powers* with respect to the events that occurred after the emergency expulsion. Mr.

10  Hatch's testimony and conclusions regarding actions taken after the decision to impose

11  emergency expulsion are excluded, though defendants are granted leave to provide an optional,

12  supplemental opinion from Mr. Hatch, subject to plaintiff's rebuttal, regarding his methodology

13  for determining what standard of care school officials owed to Mr. Powers after the emergency

14  expulsion and Mr. Powers's presence no longer constituted an imminent threat of harm to other

15  students.

16       Plaintiff seeks to exclude Mr. Hatch from testifying at trial regarding the actions of

17  defendants in (1) emergency expelling Mr. Powers; (2) long-term suspending and permanently

18  expelling Mr. Powers; (3) failing to provide Mr. Powers an opportunity to give his side of the

19  events; (4) failing to provide Mr. Powers with the written statements being used against him;

20  (5) failing to identify and consider mitigating circumstances; (6) failing to provide a

21  reengagement meeting; and (7) failing to conduct a threat assessment. Dkt. 37-1, at 12. Mr.

22  Hatch has adequately supported his expert testimony about the decision to impose emergency

23  expulsion but in all other respects has failed to demonstrate whether his "reasoning or

    methodology properly can be applied to the facts in issue." *Daubert I*, 509 U.S. at 593.

ORDER ON PARTIES' MOTIONS TO
EXCLUDE EXPERT TESTIMONY (DKTS.
33, 35 [37-1], 38) - 7

1    The parties do not dispute an emergency expulsion "starts on the day of the incident and

2    may be as long as ten (10) school days," and that an emergency expulsion may be imposed

3    "when the school believes that the student's presence in the school constitutes and immediate

4    and ongoing danger to the student, other students or staff, or the educational process for the

5    school." Dkt. 23-4, at 25 (Seattle Public Schools, "Student Rights and Responsibilities 2017–

6    2018"). Nearly the entirety of Mr. Hatch's expert opinion is spent describing why "[t]he decision

7    to emergency expel Mr. Powers was sound and reflected the proper standard of care." Dkt. 30, at

8    5.[3] Mr. Hatch first sets forth the context for when the decision to emergency expel Mr. Powers

9    was made—the rise of school shootings in the United States over the past two decades, the

10   training of students and teachers to recognize the signs of a school shooting, and the February

11   2018 Parkland, Florida mass shooting that provoked the Snapchat post from Mr. Powers that

12   precipitated concern. Dkt. 30, at 6–7. Mr. Hatch then addresses why defendant Principal

13   Howard, two assistant principals, a school counselor, and a school security officer met and

14   determined that an emergency expulsion was justified, evidence of which included the Snapchat

15   post, Mr. Powers's arrest, and student reports of being concerned about comments Mr. Powers

16   had made earlier. Dkt. 30, at 7–9. Mr. Hatch's testimony about the decision to impose an

17   emergency expulsion on Mr. Powers is reasonable and reliable: the source of the standard of care

18   that school administrators exercise in emergency situations is clear and acknowledged by the

19   parties to prioritize safety from an immediate and possibly ongoing threat. In the complaint and

20

21   [3] Mr. Hatch spends a page stating that the letter sent to the Garfield Community by school
     leadership was timely and appropriate, an issue not raised or challenged in plaintiff's motion for
22   summary judgment or motions to exclude expert testimony. Dkt. 30, at 9–10. Mr. Hatch spends a
     page referring to "the notification of the emergency expulsion and subsequent events," Dkt. 30,
23   at 10–11, but as discussed *infra*, he provides no methodology or meaningful factual or
     policy/law-based support for concluding that anything that occurred after the emergency
     expulsion met the prevailing standard of care owed to Mr. Powers by school officials.

ORDER ON PARTIES' MOTIONS TO
EXCLUDE EXPERT TESTIMONY (DKTS.
33, 35 [37-1], 38) - 8

in moving to exclude and for summary judgment, plaintiff does not meaningfully challenge the emergency expulsion decision, only the events subsequent to that decision. *See* Dkts. 1, 22, 37-1, 38. In determining whether to emergency expel a student, it is the overall safety of the students and school community that are paramount, and nothing plaintiff has presented suggests otherwise.[4]

Mr. Hatch's expert opinion moves into irrelevant and unreliable territory as soon as the standard of care shifts from emergency expulsion—when school administrators are asked to evaluate almost exclusively the threat of imminent harm a student may pose to the community— to what duty is owed by school administrators to an accused student when evaluating whether to continue with the emergency expulsion, impose long-term suspension, and transform the emergency expulsion into a permanent expulsion. On this question, Mr. Hatch's conclusory testimony that "[l]ikewise, the notification and timeline for subsequent events process met with the prevailing standard of care under the facts of the situation," is unfounded in fact, policy, or law. Defendants acknowledge that neither the district nor Mr. Powers sought review of the hearing officer's decision on appeal. Dkt. 20, at 12. The hearing officer concluded that while the decision to impose an emergency expulsion was justified, the school did not follow the mandated policies and procedures for implementing the emergency expulsion; the family was not

---

[4] Plaintiff objects to Mr. Hatch's broad statements that approach the border of personal speculation, such as, "I strongly recommend school leaders and districts follow the same steps and make the same decisions as did the Seattle School District," Dkt. 30, at 6, and "I teach my students at the University of Washington Educational Administration program as well as practicing school leaders I currently mentor to take the same steps in the same manner, as the Seattle School District if they were to encounter a similar situation. I'm confident my colleagues across the state would do the same," Dkt. 30, at 9. So long as such professional opinions remain confined to the decision to emergency expel Mr. Powers, they remain reliable reflections of Mr. Hatch's opinion of the applicable standard of care. Plaintiff may impeach the underlying suppositions on cross-examination.

ORDER ON PARTIES' MOTIONS TO
EXCLUDE EXPERT TESTIMONY (DKTS.
33, 35 [37-1], 38) - 9

1    adequately notified of the proposed disciplinary action and violated Mr. Powers's due process

2    rights; notice of the emergency expulsion was not provided within twenty-four hours but was

3    provided six days later; further investigation would have established that Mr. Powers was joking

4    and students understood the statements to be a joke at the time; Mr. Powers's actions were

5    inappropriate but did not amount to a "credible" or "focused" threat; and Mr. Powers did not

6    commit a violation of Threats of Violence. Dkt. 23-2, at 62. The hearing officer therefore

7    reversed the emergency expulsion, the long-term suspension, and permanent expulsion, while

8    also directing the school to help integrate Mr. Powers back into the school community. *Id.* Mr.

9    Hatch's conclusory assertion that school officials met their duty of care towards Mr. Powers after

10   the decision to emergency expel him is thus counterfactual with respect to the district's own

11   hearing officer and the district's failure to challenge that decision. Moreover, because Mr. Hatch

12   fails to explain his methodology for determining which policies and regulations intended to

13   protect the rights of students may be ignored or violated, and for what reasons, he has provided

14   no basis for his factual and standard-of-care presumptions. For example, in deposition testimony,

15   Mr. Hatch admits he presumed that the school was justified in failing to ask Mr. Powers for his

16   account of the events because Mr. Powers was being represented by an attorney, itself a right

17   guaranteed by the Washington Administrative Code. Dkt. 47-2, at 22–30; *see* WAC 392-400-

18   305(2) (during the prehearing and hearing process for an emergency expulsion, "[t]he student

19   and his or her parent(s) or guardian(s) shall have the right to . . . [b]e represented by legal

20   counsel."). It is neither logical nor reasonable for Mr. Hatch to presume, as he did, that absent an

21   explicit instruction from the parents that the district could still communicate to Mr. Powers

22   through his attorney, Mr. Powers was unavailable to offer his account of events: "since I didn't

23   see anywhere where they said, 'We want communication to go through our attorney but you can

ORDER ON PARTIES' MOTIONS TO
EXCLUDE EXPERT TESTIMONY (DKTS.
33, 35 [37-1], 38) - 10

still talk to Liam,' *so to me, that means Don't talk to Liam, he's not going to be available at this time*." Dkt. 47-2, at 23 (emphasis added). Mr. Hatch's expert opinion reads as unsupported and conclusory advocacy because he states this erroneous presumption as fact: "Without access to the student, the school had no choice but to convert the emergency expulsion into a Long-term Suspension." Dkt. 30, at 10.

The Court finds that Mr. Hatch has failed to state valid reasoning or a methodology for assessing the standard of care owed by school officials to protect Mr. Powers with respect to all events that occurred after the decision to emergency expel him was made. *See Daubert I,* 509 U.S. at 592–93. Mr. Hatch may not provide any testimony regarding the standard of care or events that occurred after the decision to emergency expel Mr. Powers. Defendants may, however, file an optional, supplemental opinion from Mr. Hatch, subject to plaintiff's rebuttal, that explains his methodology for assessing the standard of care owed to Mr. Powers after the decision to emergency expel him, with particular attention being paid to how his opinion may be reconciled with relevant regulations, policies, the district hearing officer's decision, and the school's acceptance of that decision.

### III.    Plaintiff's Motion to Limit Dr. Kwon's Testimony

Dr. Kwon is a forensic psychiatrist hired by defendants "to render a psychiatric opinion about whether Mr. Powers is experiencing psychiatric symptoms, and their possible relation to the actions of the staff at Garfield High School related to events of January and February 2018." Dkt. 39-2, at 2–36. Plaintiff contends the following aspects of Dr. Kwon's testimony should be excluded: (1) the opinion that the school district's actions regarding Mr. Powers were justified; (2) the opinion that actions that were justified cannot have harmed Mr. Powers; and (3) any opinions not timely disclosed in Dr. Kwon's written report. Dkt. 38, at 1. The Court agrees.

1    Defendants have not offered Dr. Kwon as an expert on the standard of care owed to Mr.

2    Powers or as an expert on how schools handle possible threats. Dr. Kwon therefore exceeds the

3    scope of his expert report by personally opining that defendants "acted reasonably and

4    appropriately in response to the circumstances of February 16, 2018," and "I believe it was

5    reasonable for school staff to have pursued their line of action." Dkt. 39-2, at 2, 32. Dr. Kwon's

6    personal opinions regarding the propriety of defendants' actions—rather than the impact that

7    such actions had upon Mr. Powers's emotional well-being—are irrelevant, unreliable, and

8    speculative. *See, e.g.*, *Ollier v. Sweetwater Union High Sch.*, 768 F.3d 843, 861 (9th Cir. 2014)

9    ("[P]ersonal opinion testimony is inadmissible as a matter of law under Rule 702 and speculative

10   testimony is inherently unreliable.") (citations omitted). Dr. Kwon may permissibly opine that

11   "[w]hen Liam refuses to accept any responsibility for triggering the events that then led to the

12   cascade of consequences, he makes it difficult to come to terms with the fairness or rationality of

13   the consequences." Dkt. 39-2, at 33. Dr. Kwon may not, however, advocate for defendants'

14   interpretation of the events by opining that other psychological reports should be discounted

15   based on "my feeling that administrators at GHS acted appropriately in response to

16   circumstances in February 2018." Dkt. 39-2, at 23.

17   The Court excludes Dr. Kwon's personal, speculative testimony that the school district's

18   actions regarding Mr. Powers were justified and that actions that were justified cannot have

19   harmed Mr. Powers. The Court also excludes any rebuttal opinions by Dr. Kwon that were not

20   disclosed by defendants in written form within thirty days of plaintiff's disclosure of the

21   addendum report by plaintiff's damages expert Dr. Muscatel. Fed. R. Civ. P. 26(a)(2)(D).

22

23

ORDER ON PARTIES' MOTIONS TO
EXCLUDE EXPERT TESTIMONY (DKTS.
33, 35 [37-1], 38) - 12

1

**CONCLUSION**

2        As stated above, the Court **DENIES** defendants' motion to exclude the testimony of Mr.

3   Vucinovich, Dkt. 33; **DENIES IN-PART** plaintiff's motion to exclude the testimony of Mr.

4   Hatch with respect to the emergency expulsion decision, and **GRANTS IN-PART** the motion to

5   exclude the testimony of Mr. Hatch regarding the standard of care owed to Mr. Powers *after* the

6   emergency expulsion decision with leave to file an optional, supplemental report by Mr. Hatch

7   within fourteen days subject to rebuttal by plaintiff, Dkt 35 [37-1]; and **GRANTS** plaintiff's

8   motion to limit the testimony of Dr. Kwon.

9        DATED this 29th day of September, 2022.

10

11        _____
          BRIAN A. TSUCHIDA

12        United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

ORDER ON PARTIES' MOTIONS TO
EXCLUDE EXPERT TESTIMONY (DKTS.
33, 35 [37-1], 38) - 13